## Scott, Appellant, *v.* United States Steel Corporation.

Argued April 13, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Samuel J. Goldstein,* for claimant, appellant.

*Ira R. Hill,* with him *G. T. Skinner,* and *Reed, Smith, Shaw & McClay,* for employer, appellee.

*Robert F. Stokes* and *Wilson H. Oldhouser,* for Commonwealth, appellee.

OPINION BY WATKINS, J., June 11, 1964:

This is an appeal from an order of the County Court of Allegheny County affirming the denial of benefits by the Workmen's Compensation Board in an occupational disease case. Mrs. Thelma Scott, a widow, brought the claim for occupational disease benefits alleging that her husband, William Scott, who was an employee of the United States Steel Corporation, died as a result of lung cancer, with metastasis to the skull, as the result of his employment.

The Referee disallowed the claim in that there was no causal connection and the Workmen's Compensation Board affirmed the disallowance of benefits and dismissed the appeal on the ground that she had failed to sustain her burden of proof that her husband's death, through cancer, was caused by his employment. The court below affirmed the Board.

This claim is brought under §108 of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L.

566, under the amendment of February 28, 1956, P. L. (1955) 1095, §1, 77 PS §1208(n), which reads as follows:

"(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population . . ."

We said in *DeMascola v. Lancaster,* 200 Pa. Superior Ct. 365, 371, 189 A. 2d 333 (1963) : "It is apparent that the provisions of §1401(c) as necessary proof in occupational disease cases are included in this amendment."

Section 301(c) reads as follows: "(c) Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged and not common to the general population. . . .". Included, therefore, in the claimant's burden of proof, is that the disease itself is peculiar to the occupation or industry in question and not common to the general population.

Section 301(f) of the Occupational Disease Act, 77 PS §1401(f), reads as follows: "(f) If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment but this presumption shall not be conclusive."

William Scott, the claimant's decedent, was employed as a laborer in the coal tar by-products division of the United States Steel Corporation from 1942 until August 18, 1958, when he became totally disabled as a result of lung cancer and died on April 9, 1959.

Section 108 of the Occupational Disease Act and its amendments, 77 PS §1208, supra, provides, inter alia,

that: "The term 'occupational disease', as used in this act, shall mean only the following diseases:" The act then proceeds through subsections (a) to (m), inclusive, and subsection (o) to designate specific diseases as "occupational diseases". Subsection (n), supra, was added as a "catch-all" amendment to take care of diseases, not so designated by the act but which by meeting the burden of proof set forth therein could qualify as "occupational diseases".

The burden of proof under §108(n), supra, is a heavy one. She must prove that the disease, in this case, lung cancer, is a hazard of his employment and that he was exposed to it; that cancer is a disease which is peculiar to the industry or occupation; and that it is not common to the general public. There was evidence in this case that cancer could have been a hazard in that there were exudations of coal tar distillates and gases which contained cancer producing agents in the form of aromatic hydro-carbons, but there was no evidence that lung cancer is a disease which is peculiar to this industry and that it was not common to the general public. We must take judicial notice of the fact that lung cancer is not peculiar to this industry and that it is common to the general public. We might just as well say that this claimant was exposed, in this industry, as he might very well be, to the common cold and that it is peculiar to the industry and not common to the general public.

At the outset the legislature designated by name the occupational diseases that were covered by the law. In order for diseases of the heart and lungs to be considered as occupational diseases in the cases of paid firemen, the legislature enacted a special amendment making proof that such diseases were peculiar to the industry and not common to the general public unnecessary. *DeMascola v. Lancaster*, supra. This is not the case under §108(n), supra, where this proof is specifically

required in the amendment and not even dependent on §301(c), supra. This "catch-all" amendment was adopted for the purpose of taking care of unusual cases where it can be proven that a disease is the result of exposure in an industry where the claimant can sustain the burden of proof set forth in the amendment to establish it as an "occupational disease", although not named in the act.

The compensation authorities must first find from the evidence that the disease was a hazard of the industry and that the claimant was exposed to it; and, from the evidence, that it was peculiar to this industry and not common to the general public; and it is only after such findings that the presumption set forth in §301(f) of the Occupational Disease Act, supra, comes into being. The presumption that the "occupational disease" arose out of and in the course of employment, depends on proof that before the disability he was employed in an industry where the "occupational disease" was a hazard. ". . . the presumption only follows after the establishment of the required facts, and whether it has thereafter been rebutted would be a question for the board to determine." *Jaloneck v. Jarecki Mfg. Co.*, 157 Pa. Superior Ct. 609, 618, 43 A. 2d 430 (1945).

It is clear, therefore, that it is necessary in this case to establish lung cancer as an "occupational disease" under §108(n), supra, before we use the presumption that this "occupational disease" arose out of industry in the course of the employment where he was exposed to the hazard.

In this case, where the compensation authorities and the court below denied benefits and dismissed the claim on the ground of causation, it was not necessary for them to have determined that question at all. The claimant in this case failed in her burden of proof to establish that the disease of which he died was an "occupational disease" as required under the Occupational Disease Act.

The Board in its decision recognized the problem as to whether the disease was an "occupational disease" under subsection (n), supra, by saying: "The Occupational Disease Act expressly prohibits an award unless the disease is peculiar to the industry and not common to the general population. (77 P.S. 1208(n), §1; see also 77 P.S. 1401(c)). These limitations were apparently designed by the legislature to exclude diseases of the very type involved here, i.e., diseases which could reasonably have some other cause than the occupation of the claimant. It seems to us that cancer of the lung is so prevalent a disease that it might possibly fall within this prohibition of the Act."

Even if there had been unequivocal medical testimony that this man died of lung cancer caused by his employment in the mill; and even if the compensation authorities believed this medical testimony and found it as a fact and so awarded benefits; and this award was affirmed by the court below; we would then have to reverse as a matter of law because the claimant had failed in her burden of proof to establish lung cancer as an "occupational disease".

Order affirmed.