## Hale, Appellant, *v.* Metalweld, Inc.

Argued November 13, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Charles F. Quinn,* with him *Sheer & Mazzocone,* for appellant.

*Richard D. Harburg,* with him *Swartz, Campbell & Detweiler,* for appellees.

OPINION BY MR. JUSTICE JONES, April 23, 1969:

In April of 1962, Paul Hale (appellant) filed a claim petition under the Pennsylvania Occupational Disease Act,[1] alleging that he was totally disabled from silicosis after being employed as a sandblaster by Metalweld, Inc., from 1952 to April 3, 1962.

---

[1] Act of June 21, 1939, P. L. 566, No. 284, §101 et seq., as amended, 77 P.S. §1201 et seq. Section 108 of the Act states: "The term 'occupational disease,' as used in this act, shall mean only the following diseases: . . . (k) Silicosis . . . in any occupation involving direct contact with, handling of, or exposure to the . . . dust of silicon dioxide $(SiO_2)$."

At the Referee's hearing, appellant introduced evidence tending to prove that he is now suffering from silicosis, that he was employed by Metalweld cleaning and grinding metal products and that he used a substance called "Black Diamond" in his blaster and carborundum as a grinding medium. At a subsequent hearing, appellant testified that he had secured a sample of "Black Diamond" from Metalweld's supplier and had had it chemically analyzed. The research chemist who analyzed the "Black Diamond" testified that the particles were slightly larger than grains of sand and that they contained 41.26% free silica by weight. By way of rebuttal, Metalweld presented testimony that appellant is not now totally disabled and argued that appellant failed to prove that he was exposed to silicon dioxide dust in the course of his employment. As far as the sample of "Black Diamond" was concerned, Metalweld urged that appellant had failed to prove that it was identical to the substance used in his blaster, that particles larger than grains of sand will not cause silicosis, and that appellant had failed to prove that "Black Diamond" would disintegrate and release silicon dioxide dust into the air during the sandblasting process.

After the series of hearings, the Referee found in favor of the appellant. The Workmen's Compensation Board reversed, holding that appellant had failed to prove that he was employed in an occupation with a silica hazard or that there was free silica in the air at Metalweld's plant. The Philadelphia Court of Common Pleas, per Judge McDermott, remanded the case to the Board for a clarification of its opinion. Metalweld appealed this order to the Superior Court which held in a per curiam opinion that the record was sufficient for an adjudication on the merits. 209 Pa. Superior Ct. 298, 228 A. 2d 217 (1967). Judge McDer-

MOTT then affirmed the Board on the merits. The Superior Court unanimously affirmed in an opinion by Judge WATKINS, 212 Pa. Superior Ct. 20, 239 A. 2d 887 (1968). We granted allocatur.

Under Section 301(c) of the Occupational Disease Act, a claimant must prove that he is disabled by an injury which is peculiar to the occupation or industry in which he is employed and not common to the general public. After passing this hurdle, the claimant can then shift the burden of proof if he can prove that the disease is a hazard of his particular occupation.

Section 301(f) of the Act states: "If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment but this presumption shall not be conclusive."[2] In interpreting this provision, the Superior Court has held that the claimant need not prove that there was a silica hazard in the particular factory or plant in which he was employed but merely that there is a hazard in the occupation or industry as a whole. The employer must then come forward with evidence to prove that the claimant was not exposed to a silica hazard in the particular plant or factory. *Crews v. Carey*, 207 Pa. Superior Ct. 461, 464, 218 A. 2d 103 (1966); *DeMascola v. Lancaster*, 200 Pa. Superior Ct. 365, 375, 189 A. 2d 333 (1963); *Metz v. Quakertown Stove Works*, 156 Pa. Superior Ct. 70, 75, 39 A. 2d 534 (1944).

The Board held that "as there was no proof that [appellant's] occupation was one in which silicosis

---

[2] See: *Scott v. United States Steel Corp.*, 203 Pa. Superior Ct. 459, 463, 201 A. 2d 243 (1964). For an excellent analysis of the policy behind this provision, see *Metz v. Quakertown Stove Works*, 156 Pa. Superior Ct. 70, 75, 39 A. 2d 534 (1944).

was a hazard, the rebuttable presumption that his disease resulted from the employment never arose, and he still had the burden of proving that he had been exposed to a silica hazard in his employment with defendant. This Board concludes that he totally failed to sustain that burden." After studying the record, we would agree that appellant failed to prove that he was exposed to silicon dioxide dust in Metalweld's plant. However, we feel that the question whether appellant has presented sufficient evidence to raise the statutory presumption is much more difficult. We agree with the rationale behind Judge McDermott's original remand order that the Board had not adequately explained the reasons for its decision.

Our problem with the Board's opinion is that, if there ever was an occupation which would appear to pose a silica hazard, it would be that of a sandblaster. If appellant were a coal miner, we could take judicial notice of the fact that there is a silica hazard in the anthracite mining industry. See: *Crews*, supra, at 464. We would like to know whether we can also take judicial notice of the fact that there is a silica hazard in the sandblasting industry.

The Board's failure to elucidate its statement that appellant had not proved that his occupation involved the danger of silicosis is that much more disturbing in light of the Superior Court's holding in *Metz*. In *Metz*, the claimant contracted silicosis from polishing metal stove parts with a solid carborundum wheel. Appellant was also employed to polish and grind metal parts in what apparently was a similar process. The Court in *Metz* said: "At the hearing Dr. Hetherington, an expert in pulmonary diseases, including silicosis . . . testified that in his professional opinion a polisher of cast iron stove parts is employed in an occupation in which silicosis is a hazard. . . . We think that Dr.

Hetherington's testimony was sufficient to bring the case within the provision of clause (f) of section 301. . . ." (156 Pa. Superior Ct. at 75, 76) Absent any explanation on the part of the Board as to its rationale, the holding in *Metz* may well be controlling in our case.

Since it would appear to us that sandblasting might be an occupation posing a silicosis threat and since it appeared that appellant was using a substance which contained at least some free silica, we are remanding this case to the Board for an elaboration of its original opinion or, if need be, for remand to the Referee for additional testimony. Specifically, we are at a loss to understand on what evidence the Board relied in holding that appellant had not established that there is a silica hazard in the sandblasting industry, or what facts the appellant failed to establish in order to raise the statutory presumption. Perhaps there is a valid reason why sandblasting as an occupation does not pose a silicosis hazard: the instant record fails to establish any such reason. Moreover, why should sandblasting as an occupation not be equated with coal mining insofar as the silica hazard is concerned? The record is silent in this respect also.

Order of the Superior Court reversed and the matter remanded to the Board for proceedings consonant with views expressed in this opinion.

Mr. Justice Cohen would vacate and remand.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. In reality, the majority Opinion is based on speculation and a desire to know more about silicosis, neither of which justifies a reversal and remand.

I would affirm the unanimous decision of the Superior Court.