John F. Moyer, Appellant, *v.* Brockway Clay Company and Commonwealth of Pennsylvania Occupational Disease Fund, Appellees.

Argued May 9, 1974, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

R. *Edward Ferraro*, for appellant.

*Robert F. Pontzer*, with him *Pontzer and Pontzer*, for appellee, Brockway Clay Company.

*J. Richard Mattern*, Assistant Attorney General, for appellee, Commonwealth.

OPINION BY JUDGE BLATT, August 13, 1974:

John F. Moyer (claimant) was employed by the Brockway Clay Company (Brockway) from 1933 to 1936 and again from 1938 to 1969. Brockway was engaged in the manufacture of clay pipe, and the claimant was a department supervisor, specifically involved in the grinding and the mixing of the clay. On January 22, 1970, the claimant filed a claim petition seeking benefits pursuant to The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, *as amended*, 77 P.S. §1201 et seq., claiming that he was totally disabled as a result of exposure to a silica hazard. A referee, the Workmen's Compensation Appeal Board (Board) and the Court of Common Pleas of Jefferson County all denied compensation. The claimant has now brought this appeal.

Where, as here, we are reviewing a decision of the Board which is adverse to the party having the burden of proof, we must determine whether or not its findings are consistent with each other and with its conclusions

of law and its order, and can be sustained without a capricious disregard of competent evidence. *Billet v. Keystone Roofing Manufacturing Company*, 6 Pa. Commonwealth Ct. 23, 291 A. 2d 921 (1972). "[Q]uestions of credibility are for the Board, and it is the Board which should make the ultimate determination with respect to conflicting testimony." *Allegheny Pittsburgh Coal Company v. Ostroski*, 12 Pa. Commonwealth Ct. 1, 4, 315 A. 2d 895, 897 (1974).

The claimant here alleges that he is disabled as the result of an occupational disease, specifically that defined by Section 108(k) of the Occupational Disease Act, 77 P.S. §1208(k) as: "Silicosis, anthraco-silicosis or coal worker's pneumoconiosis . . . in any occupation involving direct contact with, handling of, or exposure to the dust of anthracite or bituminous coal and/or dust of silicon dioxide ($SiO_2$)." Proof of the claimant's disability as well as of a silica hazard in his employment is an essential element of his case. It is provided in Section 301(f) of the Occupational Disease Act, 77 P.S. §1401(f): "If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment but this presumption shall not be conclusive." In considering this section, the Superior Court in *Metz v. Quakertown Stove Works*, 156 Pa. Superior Ct. 70, 75, 39 A. 2d 534, 536 (1944), commented: "It will be noted that the employee is not called upon, in order to get the benefit of this rebuttable presumption to show that the particular factory or plant in which he worked was a silica hazard, but only that the 'occupation or industry' was one in which silicosis was a hazard, leaving it then to the employer to show, if possible, by facts and circumstances within its knowledge and control, that its particular factory

or plant had been so conducted or carried on as to avoid or get rid of that hazard."

The claimant here introduced testimony as to his disability from Dr. A. E. Devlin, as well as a report from Dr. Thomas G. Bell. Relying heavily on x-rays, as well as the report from Dr. Bell, Dr. Devlin stated that the claimant was disabled from emphysema secondary to silicosis. The emphysema he found to be the result of a fibrotic reaction secondary to silicosis.

The claimant himself testified as to his working conditions at Brockway. He said the clay dust was often very thick and that he was exposed to this dust. Claimant also introduced the testimony of John M. Dickey, a ceramic engineer who had worked for Brockway as a consulting engineer. He testified to the types of clays used in plants in the area and the percentage of free silica in such clays (30% to 40%). He further stated that a clay dust would contain free silica which would be inhaled and that the Brockway plant was always dusty. He had never, however, made a dust count at the plant and could not testify as to the percentage of silica dust in the atmosphere.

Upon review of the testimony the Board found that the medical evidence was not sufficient to support a finding of disability. As to the silica hazard, it found that there was a heavy silica dust at the plant, but no evidence that the disease of silicosis was peculiar to the industry.

Upon careful consideration of the record, we cannot hold that the Board erred as a matter of law or capriciously disregarded competent evidence. As to the issue of disability: "The weight of the medical testimony was for the Board, and the Board was not obliged to accept even uncontradicted testimony as true." *Scariato v. No. 9 Coal Company*, 176 Pa. Superior Ct. 1, 4, 106 A. 2d 907, 909 (1954). As to the issue of the silica hazard, it was not sufficient merely to

establish that silica dust existed at the plant. The claimant did not prove that silicosis is a hazard in the occupation or industry here in question, let alone in this particular factory, and without such proof the rebuttable presumption of Section 301(f) never arose. *Chilcote v. Leidy,* 207 Pa. Superior Ct. 345, 217 A. 2d 764 (1966); *Webster v. Grove City College,* 198 Pa. Superior Ct. 475, 181 A. 2d 924 (1962).

It is clear that the Board thoroughly considered the claimant's evidence and did not capriciously disregard any such evidence.

For the above reasons, therefore, we affirm the order of the court below.