Reynolds Manufacturing Company, Petitioner *v.* Workmen's Compensation Appeal Board (Collins), Respondents.

Submitted on briefs October 8, 1985, to Judges ROGERS and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three.

*Stephen F. Ban, Springer and Perry,* for petitioner.

*Vincent J. Quatrini, Jr.,* for respondent, Frederick A. Collins.

OPINION BY JUDGE MACPHAIL, December 16, 1985:

Reynolds Manufacturing Company (Petitioner) appeals here from a decision of the Workmen's Compensation Appeal Board (Board) affirming a referee's award of partial compensation benefits to Frederick A. Collins (Claimant), pursuant to Section 108 (k) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §27.1(k). We affirm.

Claimant filed a claim petition on February 7, 1975 alleging that he had, on January 3, 1975 become disabled as a result of an occupational disease sustained while employed by Petitioner as a fitter in the steel fabricating business. Following several hearings, the referee made the following findings of fact:

FIRST: [Claimant] became disabled from silicosis as a result of being exposed to the hazard of silica while employed in the foundry industry.

. . . .

THIRD: Claimant . . . was employed in the foundry industry, where he was exposed to the hazard of silica as follows:

a. Scottdale Foundry 1934-1944

b. Reynolds Mfg. September 1952-June 11, 1974

. . . .

SEVENTH: This Referee finds as a fact based on all the evidence received that the Claimant is unable to return to his employment with [Petitioner] in the foundry industry.

EIGHTH: This Referee finds as a fact that there is work available in the Claimant's labor market area that, with his educational background and disability, said Claimant would be able to perform. . . .

NINTH: It is the Claimant's decision not to seek such employment.

TENTH: This Referee finds as a fact based on all the evidence received, both medical and lay, that on December 6, 1974, the Claimant . . . did become partially disabled from the occupational disease silicosis as a result of all his exposure to the hazard of silica while employed in the foundry industry from 1934-1944, and from September 1952 to June 1, 1974, as evidenced by the reports and/or testimony of Dr. Macy I. Levine [Claimant's medical witness].

The referee concluded that Claimant had sustained his burden of proving partial disability. Petitioner appealed this decision to the Board, challenging the

referee's findings that Claimant worked in the foundry industry when Claimant actually worked at the steel fabricating business. The Board stated that:

> There is competent medical evidence on which the Referee could properly rely, that the Claimant has silicosis and this partially disables him. The evidence of exposure is not strong, however, which may account for the thrice-repeated reference to 'the foundry industry'. For this reason, and in order to determine the etiology of the silicosis which the referee has found the Claimant to be suffering from, it seems best to remand this case for needed clarification.

Board's decision dated December 20, 1979 at p. 2. The Board continued that although the referee preferred the Claimant's medical testimony over that proffered by Petitioner, as is his prerogative, "[h]is finding of exposure to a silica hazard is on a different footing, and especially because of his erroneous characterization of [Petitioner] as engaged 'in the foundry industry' ". *Id.* at 4. The Board remanded the record to the referee for clarification, allowing both Claimant and Petitioner to present additional evidence. The Board set aside the referee's findings of fact and conclusions of law.

On remand, two hearings were held by the referee at which time additional medical testimony was received. The referee made the following factual finding:

> THIRTEENTH: This Referee finds as a fact, based on all the evidence received, both medical and lay, that on December 6, 1974, the claimant . . . was disabled and unable to return to his employment with the defendant as a result of the occupational disease of silicosis, which was prevalent at the time he became an

employee of the defendant-corporation, and which was aggravated by his exposure to silica while in his employment with the defendant from September, 1952 through June 11, 1974 as evidenced by the reports, and/or testimony of Dr. Macy I. Levine, which this Referee finds to be the more credible medical evidence.

The referee again concluded that Claimant had proved a disability from silicosis and awarded Claimant total disability benefits at the rate of $106.00 per week from February 26, 1975 until June 18, 1981; and for partial disability at the rate of $81.43 per week from June 18, 1981 until August 20, 1981; and partial disability benefits at the rate of $75.43 per week from August 20, 1981 into the future, not to exceed 500 weeks.[1]

Petitioner appealed to the Board, alleging that (1) no silica hazard was proven; (2) there was no medical testimony that Claimant suffers from silicosis; and (3) work was available to Claimant consistent with his disability and educational background prior to June 18, 1981. The Board affirmed the referee's decision, noting that (1) the testimony of Dr. Macy I. Levine, coupled with that of Claimant, was sufficient to establish the existence of a silica hazard; (2) there was competent evidence in the record to establish that Claimant is disabled from silicosis, again pointing to Dr. Levine's testimony, and (3) the finding of work availability was supported by the record.

On appeal to this Court, Petitioner argues that the record does not support a finding that a silica hazard existed at Petitioner's plant, that there is no competent evidence to support a finding that Claimant suf-

---

[1] The reduction in partial benefit compensation was based on the referee's conclusion that Petitioner had shown work availability, commensurate with Claimant's disability and educational background as of August 20, 1981, and which work Claimant had rejected.

fered from silicosis, and that there is no competent evidence to show that employment with Petitioner aggravated a silicosis disability. Petitioner is not pursuing the work availability issue to this Court.

We first turn to whether Claimant has proved the existence of a silica hazard. "Section 108(k) of the Act, 77 P.S. §27.1(k), defines the relevant inquiry as to whether the claimant's 'occupation [was one] involving direct contact with, handling of, or exposure to ... dust of silicon dioxide.' The claimant's burden of proof related to this issue is not overly demanding." *Miller v. Workmen's Compensation Appeal Board (Warren Hess, Inc.)*, 70 Pa. Commonwealth Ct. 116, 119, 452 A.2d 608, 609 (1982). The evidence as to hazard in the instant case consisted of (1) Claimant's testimony that he was exposed to "dust and stuff" from the Petitioner's sandblasting,[2] grinding, and welding activities; (2) Petitioner's answers to Claimant's Interrogatory No. 7, which indicated that grinding wheels used by Claimant as a fitter contained

---

[2] The referee had found originally no sandblasting department on Petitioner's premises, although there was a department similar to sandblasting. N.T. at 47, hearing held November 17, 1976. This factual finding was not addressed in subsequent hearings or decisions. Petitioner, citing *Armco Steel Corp. v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 443, 402 A.2d 563 (1979), contends that Claimant's inaccurate reference to sandblasting operations renders both his and Dr. Levine's testimony incompetent. However, the fact that Claimant labeled certain activities as sandblasting when they were in fact not, does not, in our view, render Claimant's testimony inaccurate. We note that Claimant spoke in terms of grinding and welding activities and testified regarding his exposure to dust with a sand consistency. This was not, as Petitioner asserts, "imaginary" workplace testimony. Our review of the record reveals that Petitioner's witness, Mr. Albert Kochka, who worked as Claimant's tacker (fitters and tackers work together) testified that the grinding wheels threw off both sparks and dust (N.T. at 63), and his testimony corroborates Claimant's in regard to work-related conditions.

1.05% chemically combined silica prior to August 23, 1973 and .81% chemically combined silica after August 23, 1973; (3) Petitioner's answer to Claimant's Interrogatory No. 9 indicating that an undetermined amount of free silica was present in the plant Claimant had worked; and (4) Petitioner's answer to a Supplementary Interrogatory which indicated that the covering or flux of welding rods used by Claimant contained silica.

The issue of whether a hazard exists is a question of fact. *A. C. Moyer Co. v. Workmen's Compensation Appeal Board,* 67 Pa. Commonwealth Ct. 50, 53, 445 A.2d 1354, 1355 (1982). As we noted in *Jones & Laughlin Steel Corp. v. Golmitz,* 28 Pa. Commonwealth Ct. 25, 28, 367 A.2d 323, 325 (1976), it is not necessary for Claimant to specifically refer to a silica hazard in his description of the dusts, and Petitioner's concession here in its answers to the interrogatories as to the presence of silica provides a basis from which the referee could have found a silica hazard to exist. In our view, this evidence is more than sufficient to satisfy Claimant's burden of proving the existence of a hazard.

Petitioner contends next that Dr. Levine's testimony cannot support a finding that Claimant suffered from silicosis because that doctor's opinion is based on an inaccurate work history supplied by Claimant. We reject this contention. Dr. Levine testified that Claimant suffered from pneumoconiosis due to sand dust as a result of his cumulative exposure over the course of his employment. Deposition of Dr. Levine, June 18, 1980 at p. 4. Dr. Levine testified that Claimant had been in the "steel fabricating plant where he was exposed to dust from an emory [grinding] wheel. This dust was characterized [by Claimant] as being sand dust." *Id.* at p. 3. On cross-examination, Dr. Levine testified as follows:

Q: Do you know anything about the steel fabricating business in general?

A: No.

Q: If I told you that someone employed such as [Claimant] were exposed to some grinding for short intervals of time and had worked in that type of position for twenty years, and prior to that time had been employed for say fifteen years in the foundry industry where he was exposed to constant sand in the air, would you be able to opine that his work in the steel fabricating business where there was a little exposure to maybe a little sand dust for very short intervals of time during the day, change your opinion that the disease he suffers from resulted from the steel fabricating business?

A: Well, it may well be that the majority of his exposure was in the foundry but if he was exposed to some sand dust in the steel fabricating business, that would be a contributory factor in his total problem. And what that means is that I can't separate the exposure from one part of his life from that in another part of his life and say it's only because of part of it. I have no way to make that kind of distinction.

Deposition of Dr. Levine, June 18, 1980 at pp. 11-12. We believe that Dr. Levine's testimony is sufficient to sustain an award against Petitioner. *See Bethlehem Mines Corp.*

Accordingly, we will affirm the order of the Board.

ORDER

The order of the Workmen's Compensation Appeal Board, at No. A-81797, dated June 24, 1982, is affirmed.